UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARRIE LEHMAN,

    Plaintiff,

v.                                                                         Case No. 1:19-cv-225
                                                                       Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her application for disability insurance benefits (DIB).

Plaintiff alleged a disability onset date of February 1, 2015. PageID.29.[1] Plaintiff identified her disabling conditions as chronic migraines, hip pain with abnormal right hip placement, back pain, and neck pain. PageID.220. Prior to applying for DIB, plaintiff completed the 12th grade and had past employment as a waitress, hospital cleaner, cashier, small parts assembler, document preparer, and marker. PageID.52. An administrative law judge (ALJ) reviewed plaintiff's application de novo and entered a written decision denying benefits on October 16, 2018. PageID.35-54. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---
[1] Plaintiff filed her application on September 21, 2016.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's application for DIB failed at the fourth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 1, 2015, and that she met the insured status requirements of the Social Security Act through December 31, 2019. PageID.37. At the second step, the ALJ found

3

that plaintiff had severe impairments of: spondylosis w/sciatica; cervicalgia; sacrococcygeal disorder; arthritis; bursitis; chronic pain syndrome; migraines; asthma; obesity; depression; anxiety; unspecified intellectual disorder; and post-traumatic stress disorder (PTSD). PageID.37. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.38.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally balance, climb ramps or stairs, stoop, kneel, crouch, and crawl. She can occasionally perform flexion or rotation of the neck. She can never climb ladders, ropes, or scaffolds, work near moving machinery or unprotected heights, or have exposure to extreme cold, heat, humidity, environmental irritants, or poorly ventilated areas. She is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes.

PageID.43. The ALJ also found that plaintiff was capable of performing her past relevant work as a cashier ("Cashier II") and a marker ("Marker II"). PageID.51-52. This work does not require the performance of work-related activities precluded by plaintiff's residual functional capacity (RFC). *Id*. Both of these jobs are defined as unskilled, light work. *Id*.

Although the ALJ found plaintiff disabled as step four, she proceeded to step five. The ALJ found that plaintiff could perform a range of other unskilled, light work in the national economy. PageID.53. Specifically, plaintiff could perform work as a marker (213,000 jobs), sorter-inspector (67,250 jobs), and garment sorter (125,250 jobs). PageID.53-54.

Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, from February 1, 2015 (the alleged onset date) through October 16, 2018 (the date of the decision). PageID.54.

4

## III. DISCUSSION

Plaintiff raised two errors on appeal.

**A. The ALJ failed to consider the medication side effects in [sic] when posing hypothetical questions to the vocational expert.**

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a vocational expert (VE) in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994).

Here, plaintiff does not address any of the hypothetical questions posed to the VE or the VE's testimony. Rather, plaintiff's argument appears to be that the ALJ failed to consider the side effects of her medication, stating that "[b]ecause the ALJ failed to consider the side effects, type, dosage, and effectiveness of [plaintiff's] prescription medications pursuant to 20 C.F.R. § 404.1529(c)(3)(iv), the ALJ's hypothetical questions posed to the vocational expert were not supported by substantial evidence." PageID.1095. Accordingly, the Court will address the issue of whether the ALJ properly addressed plaintiff's medication side effects pursuant to § 404.1529.[2]

---

[2] Counsel is reminded that the statement of errors is to identify "the specific error" before the Court. *See* Notice (ECF No. 7). If plaintiff's error is that the ALJ gave flawed hypothetical questions, then plaintiff should address the hypothetical questions posed to plaintiff and explain why they are flawed.

5

The regulation at issue states in pertinent part that:

> Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. . . Factors relevant to your symptoms, such as pain, which we will consider include: . . . (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]

20 C.F.R. § 404.1529(c)(3)(iv).

The record reflects that the ALJ addressed plaintiff's medication (including injections) in determining her residual functional capacity (RFC). *See* PageID.38, 41, 44-48, 50-51. While plaintiff mentioned medication side effects in portions of her disability report and function report (*see* PageID.224-225, 237), she did not include side effects as a medical condition that limited her ability to work (PageID.220). Plaintiff did not mention medication side effects at the administrative hearing (PageID.79-116). While plaintiff's counsel questioned the VE, the issue of medication side effects was never raised (PageID.112-115).

Plaintiff points out that her claim is supported by an opinion expressed by Adam Camp, M.D., *i.e.*, "Dr. Camp noted that Ms. Lehman takes prescription medications that can cause sedative effects." PageID.1089, 1118. However, Dr. Camp's statement does not support this claim. While the doctor checked a box asking whether plaintiff takes "prescription medications that can cause sedative effects and/or cause the patient to fall asleep," he included the following clarification:

> Ambien, but only 5mg. Studies have shown that pts taking 10mg or more sometimes experience daytime drowsiness.

PageID.729.

The ALJ adequately addressed plaintiff's medication usage as required by 20 C.F.R. § 404.1529. Accordingly, this claim of error is denied.

6

### B. The ALJ failed to properly weigh the medical source opinion evidence under 20 C.F.R. § 404.1527(c).

Plaintiff contends that the ALJ misapplied the treating physician rule and 20 C.F.R. § 404.1527(c) with respect to the opinions of treating physician Dr. Camp, and consultative examiners Lois P. Brooks, Ed.D, and Leonard J. McCulloch, M.A. PageID.1099.

#### 1. Dr. Camp

Plaintiff contends that the ALJ misapplied the treating physician rule with respect to the opinions of Dr. Camp, her treating anesthesiologist and pain management physician. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a

7

treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ addressed Dr. Camp's opinions as follows:

> Steve Hodgkins and Adam Camp, M.D., both signed a statement providing an opinion on May 31, 2018, to which the undersigned gives partial weight (27F). The claimant testified that Dr. Camp specializes in anesthesiology and treats her headaches. Mr. Hodgkins and Dr. Camp opined on a form statement that the claimant would have limitations in pace and concentration causing her to be non-productive 15% or more of the time, would need frequent breaks from work due to pain, and would likely miss three or more days of work per month (27F, pp.1-2). They further opined that the pain causing these limitations was due to very severe headaches with pain in the whole head radiating to the neck and shoulders that occur 10-15 times per month and last all day (27F, p.2). They also opined that lying in a dark room and Botox injections makes the headaches better and that emotional factors such as anxiety contribute "very much" to the patient's headaches (27F, pp.2-3). The extent of limitations alleged on this form are not supported by detailed explanation in this form statement or by Dr. Camp's treatment notes showing management of these symptoms with pain medications and Botox injections (3F; 24F). However, the residual functional capacity finding addresses the claimant's pain symptoms as well as limiting her to simple, routine, and repetitive tasks, in part, to prevent aggravation of anxiety which may also trigger these headaches.

PageID.50-51.

Plaintiff contends that while the ALJ gave Dr. Camp's opinion partial weight, he did not incorporate any portion of the opinion into the RFC finding. PageID.1098. The Court disagrees. The ALJ accepted Dr. Camp's statements regarding the source of plaintiff's migraine headaches, by limiting her to simple, routine and repetitive tasks to prevent the anxiety which could trigger the headaches. PageID.50-51. In addition, while the ALJ found that plaintiff had a number of ailments (including spondylosis, arthritis, bursitis, cervicalgia, chronic pain syndrome, and recent sacrococcygeal disorder, migraines, and asthma), she concluded that plaintiff has undergone "conservative treatment with prescribed pain medications and injections," and accommodated for these conditions by limiting her to light work with additional postural and

8

environmental limitations. PageID.51. The ALJ's evaluation of the opinion is supported by substantial evidence. Accordingly, plaintiff's claim of error is denied.

### 2. Mr. McCulloch and Dr. Brooks

The treating physician rule does not apply to either Mr. McCulloch or Dr. Brooks, because they gave an opinion based upon a consultative examination. Nevertheless, the regulations provide that the agency will evaluate every medical opinion received "[r]egardless of its source," and that unless a treating source's opinion is given controlling weight, the agency will consider the factors set forth in § 404.1527(c)(1)-(6) in deciding the weight given to any medical opinion. *See* 20 C.F.R. § 404.1527(c). While the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson*, 378 F.3d at 545, this articulation requirement does not apply when an ALJ evaluates the opinion of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007). Rather, the ALJ's decision "must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Commissioner of Social Security*, 451 Fed. Appx. 517, 519 (6th Cir. 2011) (internal quotation marks omitted).

The ALJ addressed the McCulloch/Brooks opinion as follows:

> Leonard J. McCulloch, M.A., under the supervision of Lois P. Brooks, Ed.D., completed a psychological consultative examination and provided an opinion on January 11, 2017, to which the undersigned gives partial weight (6F). Mr. McCulloch does not have a treating relationship with the claimant but had an opportunity to examine the claimant and review the medical evidence. He opined that the claimant's mental impairments moderately impacted her ability to understand, remember, and carry out simple instructions and severely impaired her abilities to respond appropriately to others and perform work in a reliable, consistent, and persistent manner (6F, p.5). The opinion lacks specific, durational work limitations or statements about the most the claimant can do despite her impairments (6F, p.5). The implied severity or intensity of the mental limitations opined are not entirely consistent with treatment records that show no mental health treatment or hospitalization and the claimant's own reports of her ability to care for the needs of herself and others (3E). However, mental impairments are addressed

9

by the residual functional capacity limitation to simple, routine, and repetitive work.

PageID.51.

The ALJ set out sufficient reasons to support giving partial weight to this opinion. The ALJ acknowledged that plaintiff's mental impairments affected her ability to perform work related activities, but not to the extent as set out in the opinion. To accommodate these impairments, the ALJ's RFC limited plaintiff to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes. PageID.43, 51. Accordingly, plaintiff's claim of error is denied.

## IV. CONCLUSION

Accordingly, the Commissioner's decision will be **AFFIRMED**. A judgment consistent with this opinion will be issued forthwith.


Dated: April 13, 2020                    /s/ Ray Kent
                                         United States Magistrate Judge